## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 24-CR-15 (JMC)** |
| | : | |
| **DAVID EVAN SMITHER,** | : | |
| | : | |
| **Defendant** | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. David Evan Smither has pleaded guilty to two second degree misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (Disorderly or Disruptive Conduct in a Capitol Building or Grounds) (Count Three) and a violation of 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building) (Count Four). For the reasons set forth herein, the government requests that this Court sentence Smither to 14 days' incarceration on Count Three and 18 months' supervised release on Count Four. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

### I.      Introduction

Defendant David Evan Smither, a 24-year-old office manager, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer

of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Smither pleaded guilty to violations of 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building or Grounds) and 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building). The government's recommendation is supported by the defendant's decision (1) to evade police to get into the Capitol, (2) to enter the building through a shattered window, and (3) to face and film or photograph a line of police officers who blocked rioters' advances.

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Smither's crime support a sentence of 14 days' incarceration, 18 months' supervised release, 60 hours of community service, and $500 in restitution in this case. Given Smither's decision to evade and ignore police officers, mere probation is insufficient to impress upon the defendant the gravity of his offenses and the importance of adhering to the rule of law.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

## II.    Factual and Procedural Background

### A.  The January 6, 2021 Attack on the Capitol

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* Statement of Offense, ECF No. 15 at ¶¶ 1-7.

### B.  Defendant Smither's Role in the January 6, 2021 Attack on the Capitol

On January 6, 2021, Smither attended the Stop the Steal rally near the Washington Monument. From there he walked to the Capitol and trespassed over the restricted perimeter that had been established around the grounds that day.



*Image 1: Smither (circled in green) at the Stop the Steal rally*



*Image 2: Smither walks from the Stop the Steal rally to the Capitol*

After passing the restricted perimeter, Smither made his way to the West Front of the Capitol and then up to the Upper West Terrace. *See* Image 3. From there, he entered the Senate Wing Corridor of the Capitol building. *See* Image 4.

 

*Image 3: Smither on the West Front, at the base of the Capitol steps*   *Image 4: Smither about to enter the Senate Wing Corridor*

At approximately 3:11 p.m., Smither entered the Senate Wing Corridor by climbing through a smashed window and stepping over downed furniture. Smither then filmed or photographed a line of officers facing him, turned the other way, and walked towards the Capitol Crypt. He returned to the Senate Corridor and left the building at 3:25 p.m., about 13 minutes after he entered. Once again, he filmed or photographed the officers as he left.



*Image 5: Smither enters the Senate Wing Corridor through a broken window*




*Image 6: Smither photographs officers as he enters the Senate Wing Corridor*

*Image 7: Smither photographs officers again as he leaves the Senate Wing Corridor*

### C. Defendant's Interviews

The government attempted to interview Smither twice before his arrest. On March 5, 2021, FBI agents tried to interview Smither at his house in Frankfort, Kentucky. Smither immediately asked if he was under arrest, which the agents said he was not. Smither then asked if he would be arrested if he refused to answer questions. Again, the agents said he would not be arrested. Smither then said, "we're done," and walked away.

A second interview attempt was more productive. On March 9, 2021, agents interviewed Smither by telephone, a call which Smither's attorney joined. In the interview, Smither admitted to going to the Capitol grounds. He said that in his first attempt to the get to the Capitol, police were blocking the area and "macing" people who tried to get inside. Smither said that he then changed his approach and entered the Capitol through another area (what turned out to be a shattered window of the Senate Wing Corridor). Smither said that, inside the building, he again saw police officers on one side, so he went to the other side. Despite climbing through a broken window, Smither claimed not to see anyone committing property damage, though he did concede that he saw downed barricades as he walked to the Capitol building. During the interview, Smither

tried to minimize his conduct. He claimed that police officers did not tell rioters to leave the building, but rather allowed them to stay.

### D.  The Charges and Plea Agreement

On December 6, 2023, the United States charged Smither by a four-count Information with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5014(e)(2)(D) and (G). On February 13, 2024, pursuant to a plea agreement, Smither pleaded guilty to Counts Three and Four of the Information, charging him with violations of 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building or Grounds) and 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building). By plea agreement, Smither agreed to pay $500 in restitution to the Architect of the Capitol.

### III.    Statutory Penalties

Smither now faces a sentencing for violating 40 U.S.C. §§ 5104(e)(2)(D) and (G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000. The defendant must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 14 days' incarceration, 18 months' supervised release, 60 hours of community service, and $500 in restitution in this case.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Smither's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Smither, the absence of violent or destructive acts is not a mitigating factor. Had Smither engaged in such conduct, he would have faced additional criminal charges.

Three factors are important in Smither's case.

*First*, according to his own interview, as Smither attempted to get to the Capitol, he saw that his path was blocked by the police, who were "macing" his fellow rioters. Smither adjusted his route to avoid those police and get into the building. His decision to do so shows his determination to get into the Capitol, even though it was obvious that he was breaking the law in doing so. *Second*, Smither decided to enter the Capitol through a shattered window frame. His choice shows not only his acceptance of violence and property destruction that day, but his willingness to capitalize on it. *Third*, as he entered the Capitol, and again as he left, Smither faced and filmed or photographed a line of police officers who were trying to block the rioters' advance. That he did so shows that Smither did not care about the seriousness of what he did, and was proud of it, not that he didn't realize what he was doing. Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter, as well as the need for continued supervision.

### B.  Smither's History and Characteristics

The defendant is a 24-year-old office manager and student who lives with his mother and father. His upbringing is devoid of characteristics that would explain or perhaps mitigate his criminal behavior. Indeed, the PSR documents a loving family, a stable job, and an education plan. ECF No. 26 at ¶¶ 28-32. This makes the importance of an adequate deterrent even more important. Smither must understand the seriousness of his offenses and their consequences, lest he think he can commit them again.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-CR-233 (ABJ) (D.D.C. June 9, 2023), Tr. at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was [was] an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B)-(C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

 The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most

compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." Statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-41 (D.D.C. Oct. 13, 2021) Tr. at 37.

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Quite simply, the defendant has never expressed remorse for his actions. In the two interviews with the FBI before his arrest, Smither never showed any regret for what he did. Rather, he tried to minimize his conduct, claiming that police officers were not telling rioters to leave the building, and in fact allowing them to stay. Such statements suggest that Smither has not reflected on his own conduct, and perhaps still thinks he is in the right. As such, any statements of remorse now should be treated highly skeptically. *See United States v. Matthew Mazzocco*, 1:21-cr-54 (TSC) (D.D.C. Oct. 4, 2021) at 29-30 ("[The defendant's] remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized he was in trouble. It came when he realized that large numbers of Americans and people worldwide were horrified at what happened that day. It came when he realized that he could go to jail for what he did. And that is when he felt remorse, and that is when he took responsibility for his actions.") (statement of Judge Chutkan).

Another presidential election is approaching, and with it, another election certification. Because Smither has not shown any contrition for joining the attack on the Capitol, a meaningful deterrent is necessary to ensure that Smither does not repeat his crime.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[2] This Court must sentence Smither based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Smither has pleaded guilty to Counts Three and Four of the Information, charging him with violating 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building or Grounds) (Count Three) and 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building). These offenses are Class B misdemeanors. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating

---

[2] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Heinl*, 23-CR-370 (EGS), the defendant, Jennifer Heinl—like Smither—trespassed over the Capitol Grounds' restricted perimeter and up the Capitol steps. Sentencing Memorandum at 3, *United States v. Heinl*, 1:21-CR-370 (D.D.C. Feb. 28, 2022), ECF No. 35. Like Smither, Heinl filmed or photographed what she saw. *Id.* at 3. Like Smither, Heinl entered the Capitol through the Senate Wing Corridor, though she did so through the open door, while Smither did so through a smashed window. *Id.* at 5. And like Smither, Heinl saw officers and traveled to the Crypt. *Id.* at 6. Heinl spent more time in the Capitol—over 45 minutes—but both minimized their conduct in subsequent interviews to the FBI. *Id.* at 8-12. Heinl was sentenced to 14 days' intermittent incarceration, two years' probation, and $500 in restitution. Judgment, *United States v. Heinl*, 1:21-CR-370 (D.D.C. June 21, 2022), ECF No. 43. Smither deserves a similar sentence.

In *United States v. Crase*, 21-CR-82 (CJN), the defendant Dalton Crase—like Smither—traveled up the steps of the U.S. Capitol on January 6, 2021. Sentencing Memorandum at 4, *United States v. Crase*, 21-CR-082 (CJN) (D.D.C. Jan. 6, 2022), ECF No. 47. Both Crase and Smither were aware they were not supposed to be there: Smither because he saw scenes of chaos outside, Crase because his companion told him "this is not right." *Id.* at 11-12. Yet both seemed excited by or proud of their actions: Smither because he filmed police, Crase because he posed for several excited photographs in the building. *Id.* at 13-14. And both spent similar times in the building: Crase spent nine minutes in the Capitol, while Smither spent 13. *Id.* at 12. Yet when interviewed by the FBI, Crase was immediately cooperative, and admitted that "I was breaking the law by being in the Capitol building but it didn't register with me." *Id.* at 15. Smither, by contrast, when contacted by the FBI, said simply "we're done," and initially refused to cooperate. Crase was

sentenced to 15 days' intermittent confinement, 36 months' probation, 60 hours of community service, and $500 in restitution. Judgment, *United States v. Crase*, 21-CR-082 (CJN) (D.D.C. Jan. 25, 2022), ECF No. 62. Smither deserves a similar sentence.

In *United States v. Uberto*, the defendant—Thomas Uberto—filmed or photographed the scene, just as Smither did. Sentencing Memorandum at 3, *United States v. Uberto*, 22-CR-7 (TSC) (D.D.C. Dec. 2, 2022), ECF no. 36. Like Smither, the defendant saw signs of chaos that made it obvious he was not supposed to be there. *Id.* at 4. And like Smither, Uberto entered the Capitol through the Senate Wing Corridor, though Uberto did so through the open door, while Smither did so through a smashed window. Both men also spent similar times in the Capitol: eight minutes for Uberto, 13 minutes for Smither. *Id.* at 7. Uberto was sentenced to ten days' incarceration with no term of supervised release and $500 in restitution. Judgment, *United States v. Uberto*, 22-CR-7 (TSC) (D.D.C. Feb. 6, 2023), ECF no. 44. Smither deserves a similar sentence.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.    Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[3] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Smither must pay $500 in restitution, which reflects in part the role Smither played in the riot on January 6.[4] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023. *Id.* Smither's restitution payment must be made to the

---

[3] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[4] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 11.

### VI.    Fine

The defendant's convictions for violations of 40 U.S.C. §§ 5104(e)(2)(D) and (G) subject him to a statutory maximum fine of $5,000 for each count. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1). Here, the PSR does not show that the defendant is unable to pay a fine, thus pursuant to the factors outlined in 18 U.S.C. § 3572(a), the Court has authority to impose a fine. 18 U.S.C. § 3572(a)(1).

## VII.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 14 days' incarceration, 18 months' supervised release, 60 hours of community service, and $500 in restitution. Such a sentence recognizes the factors that make Smither's crimes important: his decision to evade police, his decision to enter the Capitol through a shattered window, and his decision to film police, both as he entered and left the building. Such a sentence also protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Smither's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:      s/ *Brendan Ballou*
Brendan Ballou
Special Counsel
DC Bar No. 241592
United States Attorney's Office
601 D Street NW
Washington, DC 20001
(202) 431-8493
brendan.ballou-kelley@usdoj.gov